UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

PAUL H. LEINER,

                              Plaintiff,

        v.                                                    **DECISION AND ORDER**
                                                              14-CV-979S
FRESENIUS KABI USA, LLC,

                              Defendant.

## I.  INTRODUCTION

In this action, Plaintiff Paul H. Leiner alleges that his former employer, Defendant

Fresenius Kabi USA, LLC ("Fresenius Kabi"), discriminated and retaliated against him

based on his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29

U.S.C. §§ 621, et seq., and § 296 of the New York Human Rights Law ("NY HRL").

Pending before this Court is Fresenius Kabi's Motion for Summary Judgment.

(Docket No. 28.)  For the reasons discussed below, the motion is granted.

## II.  BACKGROUND

### A.  Leiner's Employment at Fresenius Kabi

Fresenius Kabi develops, manufactures, and markets injectable pharmaceuticals

in the oncology, anti-infective, anesthetic/analgesic, and critical care fields.  (Defendant's

Rule 56 Statement ("Defendant's Statement"), Docket No. 30, ¶ 1; Plaintiff's Rule 56

Statement ("Plaintiff's Statement"), Docket No. 40-1, ¶ 1.[1])  It maintains facilities

---

[1]This Court has confirmed and is satisfied that the evidence cited in the parties' Rule 56 Statements
supports the assertions therein.  Cf. Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 74 (2d Cir. 2001) (holding
that factual allegations contained in a Rule 56 Statement that find no support in the record evidence must
be disregarded and the record reviewed independently).

1

throughout the United States, including a manufacturing facility in Grand Island, New York, at which it employs approximately 725 people. (Defendant's Statement, ¶¶ 2, 3; Plaintiff's Statement, ¶¶ 2, 3.) Operations at the Grand Island facility include aseptic (sterile) manufacturing and sterilization processes, quality control laboratories, warehousing, and administrative offices. (Defendant's Statement, ¶ 4; Plaintiff's Statement, ¶ 4.) Given the nature of its work, Fresenius Kabi is subject to the federal Food and Drug Administration's oversight. (Defendant's Statement, ¶ 5; Plaintiff's Statement, ¶ 5; Affidavit of Wayne Hopkins ("Hopkins Aff."), Docket No. 35, ¶ 4.)

Leiner began working for Fresenius Kabi as a packager on August 8, 1988, when it was Lifomed. (Deposition of Paul H. Leiner ("Leiner Dep."), Docket No. 40-6, p. 19; Affidavit of Peter Martinez ("Martinez Aff."), ¶ 13.) He was promoted several times, including in February 2010, when he became Production Supervisor in the Aseptic and Terminally Sterilized Filling and Capping Department. (Defendant's Statement, ¶ 6; Plaintiff's Statement, ¶ 6; Leiner Dep., pp. 19-29, 31.) In that capacity, Leiner supervised production personnel and processes within his assigned area of responsibility, including supervising production operators to ensure compliance with all company and regulatory requirements. (Defendant's Statement, ¶ 7; Plaintiff's Statement, ¶ 7.)

In March 2013, Wayne Hopkins, the Senior Manager of Manufacturing, offered Leiner another promotion to a weekend Shift Manager position. (Defendant's Statement, ¶ 8; Plaintiff's Statement, ¶ 8; Leiner Dep., pp. 26, 27; Hopkins Aff., ¶ 12.) The parties dispute whether this promotion would have come with a pay raise. (Defendant's Statement, ¶ 9; Plaintiff's Statement, ¶ 9.) In any event, Leiner did not believe that Hopkins's offer was genuine in the sense that he did not believe that Hopkins wanted him

in that position. (Leiner Dep., pp. 26, 54, 70-71.) The offered position had other drawbacks as well: 30-, 60-, and 90-day evaluation periods during which Leiner could be removed with no guarantee that he could return to his previous position and shift. (Leiner Dep., pp. 26-27, 68-73.) Leiner therefore declined the promotion. (Defendant's Statement, ¶ 10; Plaintiff's Statement, ¶ 10; Leiner Dep., pp. 26, 27, 69; Hopkins Aff., ¶ 14.)

In April 2013, Fresenius Kabi formed a Leadership Team at the Grand Island facility to transform the culture and address issues raised by the FDA, which included prioritizing aseptic practices and environments.[2] (Defendant's Statement, ¶ 11; Plaintiff's Statement, ¶ 11; Martinez Aff., ¶¶ 9, 11.) Leiner joined this Leadership Team of approximately 30 employees, the majority of whom were in Leiner's protected age group. (Defendant's Statement, ¶¶ 12, 13; Plaintiff's Statement, ¶¶ 12, 13.) Members of the Leadership Team did not receive any additional compensation or other pecuniary benefits. (Defendant's Statement, ¶ 14; Plaintiff's Statement, ¶ 14.)

In May 2013, Leiner was removed from the Leadership Team. (Defendant's Statement, ¶ 15; Plaintiff's Statement, ¶ 15.) He claims that another employee, Jason Ashbery, told him that he was removed because he declined the promotion that Hopkins offered him in March 2013. (Leiner Dep., p. 28.) Fresenius Kabi maintains that Leiner was removed because he exhibited conduct inconsistent with a leadership role, including

_____

[2] Fresenius Kabi had earlier received a warning letter from the FDA in February 2012 concerning procedures for ensuring that all drug products were aseptic. (Defendant's Statement, ¶ 5; Plaintiff's Statement, ¶ 5; Hopkins Aff., ¶ 6.)

avoidance of responsibility and deflection of supervisory accountability in disciplining a subordinate. (Martinez Aff., ¶ 24; Hopkins Aff., ¶ 17.)

Several months later, on July 30, 2013, second-shift operators had trouble loading a batch of Doxycycline (Batch #7035693) into a Lyophilizer, which is a machine used to freeze-dry pharmaceuticals for transport.[3] (Defendant's Statement, ¶ 16; Plaintiff's Statement, ¶¶ 16, 18 n.1; Leiner Dep., pp. 146-147.) In connection with this batch, one of the operators noted on the Lyophilization loading tag ("Lyo Loading Tag") that the shelves were "to [sic] small to load." (Defendant's Statement, ¶ 17; Plaintiff's Statement, ¶ 17.) But the batch was in fact loaded, so the batch needed corrections, which Leiner was tasked with completing.[4] (Leiner Dep., pp. 125-127.) After Leiner reviewed the batch before its release, he added the following corrective notation to the Lyo Loading Tag: "From front[,] shelf spacing correct, however, 2 shelves were slightly askew causing appearance of two [sic] small of space to load. Shelf was aseptically manipulated to allow loading." (Defendant's Statement, ¶ 18; Plaintiff's Statement, ¶ 18; Leiner Dep., p. 151.)

Leiner admits that he made this notation but insists that it came in the normal course of corrections that Hopkins asked him to make because of his experience. (Leiner Dep., pp. 125-126.) According to Leiner, Hopkins routinely came to him with notes "indicat[ing] that batch record corrections needed to be done on certain batches to get them released." (Id. at pp. 125, 132-133.) Almost every batch required written

---

[3] Doxycycline is a pharmaceutical used to treat bacterial infections, including pneumonia and other respiratory tract infections, Lyme disease, and infections of skin and urinary systems, among other ailments. (Huffman Aff., ¶ 5.)

[4] Batch corrections were part of Fresenius Kabi's written procedures for identifying, reporting, investigating, documenting, and approving non-conformance or deviation incidents, and for implementing follow-up actions. (Hopkins Aff., ¶ 5.) These procedures were necessary to comply with FDA requirements. (Id.)

corrections. (Id.) Leiner completed most of these corrections because of his experience and "good cross-functional understanding." (Id. at pp. 126, 133.)

As it relates to the batch at issue, Leiner states that he was given a note on August 30, 2013, seeking an explanation for why an operator would write that he was unable to load 15 trays into the lyophilizer despite documentation that the trays had in fact been loaded. (Leiner Dep., pp. 127, 129.) Leiner knew of a recurring problem with hanger rods getting bent in the lyophilizer, which prevented proper shelf spacing. (Id. at pp. 127, 150-151.) When this occurred, the common solution was to use a piece of metal to open the shelf enough to insert the tray. (Id. at pp. 127, 128.) Knowing all of this, Leiner reviewed the batch record, the Lyo Loading Tag, and other documentation before confirming that all 15 trays had been loaded. (Id. at p. 128.) He then made the notation above on the Lyo Loading Tag. (Plaintiff's Statement, ¶ 18; Leiner Dep. p. 128.) In essence, Leiner assumed that operators had manually pried open the shelf in an aseptic environment given his past experiences with similar issues and his confidence in the operators. (Leiner Dep., pp. 128-129.) He did not review video of the incident to confirm what actually happened before drawing this conclusion and making the note on the Lyo Loading Tag. (Id. at pp. 130-131, 143.)

The next month, an auditor discovered that Leiner's note on the Lyo Loading Tag could not be reconciled with video footage of the lyophilizer loading process of the batch at issue. (Defendant's Statement, ¶ 19; Leiner Dep., p. 157; Affidavit of Anne Huffman ("Huffman Aff.,"), Docket No. 34, ¶ 12.) Kathy Kraft, Senior MQA Manager, therefore initiated a "deviation investigation" with respect to Batch #7035693, which had to be

completed before the product could be released.  (Defendant's Statement, ¶¶ 19, 20; Plaintiff's Statement, ¶ 20.)

The investigation was assigned to Investigative Writer Cindy Wojtowicz, a member of the Quality Assurance department.  (Defendant's Statement, ¶ 21; Plaintiff's Statement, ¶ 21.)  Wojtowicz interviewed Leiner.  (Defendant's Statement, ¶ 22; Plaintiff's Statement, ¶ 22; Leiner Dep., pp. 131, 140.)  During the interview, Leiner admitted that he made his notation on the Lyo Loading Tag based on past practices and did not in fact interview the operators involved in the processing of Batch #7035693 or review the video of the product being loaded to determine first-hand what had occurred.  (Id.)  Leiner maintains that no such interview or video review was required and that he was only doing what Hopkins asked of him in reconciling the conflicting batch report so that the product could be released.  (Plaintiff's Statement, ¶ 22; Leiner Dep., pp. 125, 130.)

On October 17, 2013, Peter Martinez, Senior Manager of Plant Human Resources, interviewed Leiner about this incident.  (Defendant's Statement, ¶ 23; Plaintiff's Statement, ¶ 23; Martinez Aff., ¶ 1.)  Leiner again admitted that he did not speak to the operators who loaded Batch #7035693 or review video of the loading process, but instead, assumed that operators had engaged in the past practice of manually manipulating skewed shelves to load the product.  (Defendant's Statement, ¶ 24; Plaintiff's Statement, ¶ 24.)

After the investigation, multiple individuals at Fresenius Kabi reviewed the results of the investigation to determine whether Leiner's conduct rose to the level of falsification.  Anne Huffman, Senior Director of Quality, determined that Leiner's conduct amounted to falsification, and she recommended to Martinez that Leiner's employment be terminated.

(Huffman Aff., ¶¶ 16, 17.)  Martinez, Hopkins, Jason Ashbery (Leiner's direct supervisor), and Steve Nowicki (Leiner's superior), reached the same conclusions.  (Martinez Aff., ¶¶ 44, 46; Hopkins Aff., ¶¶ 27, 28.)  Martinez then recommended to James Callanan, Senior Vice President of Human Resources, that Leiner be terminated.  (Martinez Aff., ¶ 47.) Callanan approved Martinez's recommendation on October 21, 2013.  (Id.)

On October 24, 2013, Fresenius Kabi terminated Leiner's employment for falsification of documentation—that is, falsely verifying that the trays in the lyophilizer were aseptically manipulated when, in fact, Leiner had no such direct knowledge. (Defendant's Statement, ¶¶ 25, 26; Plaintiff's Statement, ¶¶ 25, 26; Leiner Dep., pp. 132, 155; Martinez Aff., ¶ 41).  Leiner testified that he was told that Peter Martinez, James Callanan, Steve Nowicki, Anne Huffman, Mike Newson, and Wayne Hopkins all played a role in determining that his employment should be terminated.  (Leiner Dep., pp. 156-157, 162.)  Batch #7035693 was ultimately destroyed.[5]  (Martinez Dep., ¶ 42.)

## B. Leiner's Claims of Age Discrimination at Fresenius Kabi

Leiner was 47 years old when Fresenius Kabi terminated his employment. (Complaint, Docket No. 1, ¶ 1.) Leiner maintains that he and other employees were discriminated against based on age.  In particular, he testified that Hopkins had a generally bad attitude and demeanor and often acted unprofessionally, particularly when interacting with the production operators, the bulk of whom were men over the age of 40. (Leiner Dep., pp. 39-50.)  He also testified that unidentified people at Fresenius Kabi

---

[5] The batch had to be destroyed because, contrary to Leiner's assumption that operators had loaded the Lyo in an aseptic environment, they had not.  (Leiner Dep., pp. 129, 131; Martinez Aff., ¶ 42; Final Report, Docket No. 33-4.)

would "tiptoe around race and age and speak in a certain code sometimes." (Id. at p. 105.) As the code for age, Leiner saw "people mimic walking with a cane to indicate old, mimicking it, hunched over. I've heard people – I don't know specifics, but I've heard and seen people use those signs." (Id. at p. 106.) When asked whether the code was used by decisionmakers or people just speculating about why something did or did not occur, Leiner answered, "[s]peculating about why something didn't occur. I never saw anybody in management actually say or do any of those things." (Id. at pp. 106-107.)

When asked about his own termination, Leiner testified that he thought the decision "was done in haste, vindictively and based with [sic] they needed a scapegoat for the Parexel audit that was going on or had just ended and they had to have a final report to Parexel." (Id. at pp. 157, 159.) He believes that given the delay between his notation on the Lyo Loading Tag and his termination, there was some debate about whether what he had done constituted falsification, and since other younger employees had acted similarly, he was being singled out because of his age. (Id. at p. 158.) Moreover, because Leiner had similarly corrected batches in the same way previously without incident, he believes that there is no explanation for his termination other than that it was age-related. (Id. at p. 160.)

Leiner also testified that Fresenius Kabi treated him differently than two younger employees—Marques Palmer and Jason Ashbery—who were both under 40 years old. (Leiner Dep., pp. 122, 161; Complaint, ¶ 24.) According to Leiner, Palmer backdated audit forms in July 2012, and Ashbery signed off on an incomplete batch record in August 2013. (Leiner Dep., pp. 89-93, 96-97, 118-124.) Leiner views both instances as similar instances of falsification, yet neither Palmer nor Ashbery were fired. (Id.)

Fresenius Kabi maintains that it has a policy prohibiting all forms of discrimination in employment, including age discrimination. (Martinez Aff., ¶ 49.) According to Peter Martinez, a majority of the employees at Fresenius Kabi's Grand Island facility are older than 40, including himself, Jason Ashbery, Anne Huffman, Wayne Hopkins, Steven Nowicki, and James Callanan. (Id. at ¶¶ 1, 51.) Fresenius Kabi also contends that it takes document falsification seriously and terminated eight employees between 2012 and 2014 for falsifying records, two of whom were under 40. (Id. at ¶ 54.) It denies that it terminated Leiner's employment for any reason other than his falsification of documents, and specifically denies terminating his employment because of his age. (Hopkins Aff., ¶¶ 29, 32; Martinez Aff., ¶¶ 55, 58.) Moreover, Fresenius Kabi denies that Leiner was similarly situated to Palmer or Ashbery, such that they are reasonable comparators. (Martinez Aff., ¶ 56; Hopkins Aff., ¶ 31.)

## C. Leiner's Claims of Retaliation by Fresenius Kabi

Leiner testified that before he was terminated, he spoke to his co-workers and superiors about how older workers were being discharged. (Leiner Dep., p. 108.) He maintains that he told John Horab, his production manager and superior, that he did not understand why a group of experienced employees were being discharged in September 2012, if Fresenius Kabi was trying to stay FDA-compliant. (Id. at pp. 108-109, 111.) Leiner and Horab speculated together that, because the discharges occurred in the third quarter, the employment terminations were a cost-savings measure. (Id. at p. 110.) Most of those employees terminated were over 40 and received severance packages. (Id. at p. 111.) According to Leiner, those employees were told that they were being discharged due to "reorganization," yet some were replaced by workers under 40. (Id. at pp. 111,

112-113, 175.) Leiner believes that consideration of age and experience played a role in these employment and reorganization decisions. (Id. at 174.) Leiner also speculated with his co-employees about the reasons for the terminations, including Adam Gettlefinger and Paul Piskor, both fourth shift filling supervisors, with whom Leiner discussed how "old timers" were being "let go for no reason." (Id. at pp. 114-115.) Leiner also spoke to fellow employees Matt Waggoner and Sherie Poulson-Cook about "basically the same things." (Id. at 116.)

Fresenius Kabi maintains that Leiner never filed a complaint about age discrimination or retaliation while employed at Fresenius Kabi. (Huffman Aff., ¶ 19; Hopkins Aff., ¶ 33; Martinez Aff., ¶ 59.)

### D. Leiner's Administrative Charge

Leiner filed a charge with the United States Equal Employment Opportunity Commission on December 23, 2013, alleging that Fresenius Kabi discriminated and retaliated against him on account of his age.[6] (EEOC Charge, Docket No. 32-1.) The EEOC investigated Leiner's claim but was unable to conclude that the information obtained established violations of the employment statutes. (Dismissal and Notice of Rights Letter, Docket No. 32-2.)

### E. Leiner's Federal Complaint

Leiner commenced the instant action on November 18, 2014, alleging four causes of action: (1) unlawful discrimination on the basis of age in violation of the ADEA; (2) unlawful retaliation in violation of the ADEA; (3) unlawful discrimination on the basis of

---

[6] According to Leiner, an EEOC investigator advised him not to pursue any race-based claims. (Leiner Dep., p. 155.)

age in violation of NY HRL § 296; and (4) unlawful retaliation in violation of NY HRL § 296. (Complaint, ¶¶ 56-79).

Fresenius Kabi moved for summary judgment on April 8, 2016. (Docket No. 28.) After completion of briefing on June 21, 2016, this Court reserved decision without oral argument.

## III. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a). A fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion." Addickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970). "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991). The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996).

But a "mere scintilla of evidence" in favor of the nonmoving party will not defeat summary judgment. Anderson, 477 U.S. at 252. A nonmoving party must do more than cast a "metaphysical doubt" as to the material facts; it must "offer some hard evidence showing that its version of the events is not wholly fanciful." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); D'Amico v. City of N.Y., 132 F.3d 145, 149 (2d Cir. 1998). That is, there must be evidence from which the jury could reasonably find for the nonmoving party. Anderson, 477 U.S. at 252.

In the context of employment discrimination cases, the United States Court of Appeals for the Second Circuit has instructed district courts to use extra care when deciding whether to grant summary judgment, because "the ultimate issue to be resolved in such cases is the employer's intent, an issue not particularly suited to summary adjudication." Eastmer v. Williamsville Cent. Sch. Dist., 977 F. Supp. 207, 212 (W.D.N.Y. 1997) (quoting Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1224 (2d Cir. 1994)). But that does not preclude summary judgment in employment discrimination actions: "[t]he summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985). Indeed, the Second Circuit has noted that "the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to commercial or other areas of litigation." Id.

### B. Leiner's ADEA and NY HRL Age-Discrimination Claims[7]

Under the ADEA, it is "unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a). ADEA claims are analyzed under the familiar three-part burden shifting test set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-804, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); <u>Leibowitz v. Cornell Univ.</u>, 584 F.3d 487, 498 (2d Cir. 2009).

Under this framework, the plaintiff must first establish a prima facie case of age discrimination by showing that (1) he was a member of a protected class (at least 40 years of age at the relevant time); (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) the circumstances of that adverse employment action give rise to an inference of age discrimination. <u>See</u> <u>Burger v. New York Inst. of Tech.</u>, 94 F.3d 830, 833 (2d Cir. 1996); 29 U.S.C. § 631. This burden is *de minimis.* <u>See</u> <u>Mendillo v. Prudential Ins. Co. of Am.</u>, 156 F. Supp. 3d 317, 338 (D. Conn. 2016) (citing <u>Timbie v. Eli Lilly & Co.</u>, 429 Fed.Appx. 20, 22 (2d Cir. 2011)); <u>see also</u> <u>Carlton v. Mystic Transp., Inc.</u>, 202 F.3d 129, 134 (2d Cir. 2000) (describing the plaintiff's initial burden as minimal).

If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions which, if believed by the

---

[7] The law governing ADEA claims is identical to that governing NY HRL § 296 age-discrimination claims. <u>See</u> <u>Gorzynski v. JetBlue Airways Corp.</u>, 596 F.3d 93, 105 n.6 (2d Cir. 2010). The two claims are therefore analyzed together. <u>See</u> <u>Downey v. Adloox, Inc.</u>, 16-CV-1689, 2018 WL 5266875, at *4 (S.D.N.Y. Oct. 23, 2018) (analyzing ADEA and NY HRL § 296 claims in tandem).

trier of fact, would support a determination that unlawful discrimination was not the but-for cause of the adverse employment action.  See Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 129 S. Ct. 2343, 2350-2351, 174 L. Ed. 2d 119 (2009) (unlike Title VII actions, a plaintiff bears the burden on an ADEA claim of proving that age was the but-for cause of the challenged action); Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 106 (2d Cir. 2010); cf. Bickerstaff v. Vassar Coll., 196 F.3d 435, 446 (2d Cir. 1999) (noting that the defendant's burden is not a demanding one, as the burden of persuasion always remains with the plaintiff).  If the defendant meets this burden, "the presumption of discrimination arising with the establishment of the prima facie case drops from the picture." Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000) (citations omitted); see also St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 519, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993).

The burden then shifts back to the plaintiff to "come forward with evidence that the defendant's proffered, non-discriminatory reason is a mere pretext for actual discrimination."  Id.  It is not enough for the plaintiff to produce some evidence of discrimination; rather, to survive a motion for summary judgment, the plaintiff must present both sufficient evidence that the purported non-discriminatory reason was false and evidence that age was the but-for cause of the adverse actions.  See id.

### 1.  Prima Facie Case

There is little dispute, and this Court finds, that the record contains sufficient evidence from which a jury could conclude that Leiner was a member of a protected age group, was qualified for his position at Fresenius Kabi, and suffered an adverse employment action in the form of termination.  Fresenius Kabi's argument thus focuses primarily on the final prong—whether the circumstances of Leiner's termination give rise

to an inference of age discrimination.  Given the minimal burden on Leiner at the prima facie stage, this Court will assume that Leiner has met this burden and proceed to the next step of the analysis.[4]  See Delaney v. Bank of Am. Corp., 766 F.3d 163, 168 (2d Cir. 2014).

## 2.  Legitimate, Non-Discriminatory Reason

Moving to the next stage, this Court finds that Fresenius Kabi has set forth a legitimate, non-discriminatory reason for terminating Leiner's employment: his falsification of batch records pertaining to Doxycycline (Batch #7035693).  See Cai v. Wyeth Pharm., Inc., No. 09 Civ. 5333 (GBD), 2012 WL 933668, at *9 (S.D.N.Y. Mar. 19, 2012) ("Courts have uniformly held that falsifying company documents is a legitimate, non-discriminatory reason for termination.")  Although Leiner disagrees that his actions amounted to falsification of documents, that is of no moment.  It is undisputed that Fresenius Kabi investigated Leiner's conduct, concluded that it amounted to falsification in violation of company policy, and cited that reason as the basis for his termination.  Thus, Fresenius Kabi has met its burden under the McDonnell Douglas test.  See id. ("Any legitimate, non-discriminatory reasons will rebut the presumption triggered by the prima facie case.")

---

[4]"Where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case [set forth a legitimate, non-discriminatory reason], whether the plaintiff really did so is no longer relevant.  The district court has before it all the evidence it needs to decide whether the defendant intentionally discriminated against the plaintiff." U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 715, 103 S. Ct. 1478, 75 L. Ed. 2d 403 (1983) (internal quotation marks omitted).

### 3. Pretext for Intentional Discrimination

Leiner must now present sufficient evidence from which a trier of fact could reasonably conclude that Fresenius Kabi's legitimate, non-discriminatory reason is mere pretext for unlawful discrimination and that age was the actual but-for cause of his employment termination. "In short, the question becomes whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination." Weinstock, 224 F.3d at 42. If, instead, "the plaintiff create[s] only a weak issue of fact as to whether the employer's reason [is] untrue and there [is] abundant and uncontroverted independent evidence that no discrimination ha[s] occurred," then the defendant is entitled to summary judgment. Reese v. Sanderson Plumbing Prods. Inc., 530 U.S. 133, 148, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000).

Leiner fails to carry his burden at this stage.

First, Leiner fails to present sufficient evidence from which a reasonable trier of fact could conclude that Fresenius Kabi's legitimate, non-discriminatory reason for terminating his employment is false. Leiner admits that he made representations on the Lyo Loading Tag that he had no direct knowledge of, most importantly that operators aseptically manipulated the shelves. (Leiner Dep., pp. 125-126, 128-129.) He also admits that he never reviewed the video of the batch loading or spoke to the operators before recording his assumptions as fact on the Lyo Loading Tag. (Id. at pp. 130-131, 143.) Moreover, there is no dispute that the investigation into this incident resulted in a finding that Leiner falsified the Lyo Loading Tag and a recommendation that his employment be terminated. (Huffman Aff., ¶¶ 16, 17; Martinez Aff., ¶ 44; Hopkins Aff., ¶¶ 27, 28.)

Further, Leiner concedes what Fresenius Kabi emphasizes: that Fresenius Kabi takes the issue of document falsification seriously and has notified its employees that falsification could result in termination. (Martinez Aff., ¶ 52.) Leiner admits that falsification of documents is "severe" and constitutes a terminable offense. (Leiner Dep., pp. 157-158 ("when somebody falsifies, it's discovered, they're fired the next day"), 200.) Leiner's termination was therefore admittedly consistent with Fresenius Kabi's policies.

While Leiner may disagree that his conduct amounted to falsification of documents, this does not create an issue as to the veracity of Fresenius Kabi's reasons for terminating his employment. See Sharpe v. Utica Mut. Ins. Co., 756 F. Supp. 2d 230, 250 (N.D.N.Y. 2010) (finding that, even if flawed, a faulty investigation is not in and of itself evidence of pretext) (citing Rodriguez v. City of N.Y., 644 F. Supp. 2d 168, 187 (E.D.N.Y. 2008)). What matters is that Fresenius Kabi relied on the results of its investigation—flawed or not—as the basis to terminate Leiner's employment, and there is no evidence to the contrary. Leiner has thus failed to set forth sufficient evidence from which a factfinder could reasonably determine that Fresenius Kabi's legitimate, non-discriminatory reason is false.

Second, Leiner has failed to present sufficient evidence from which a trier of fact could conclude that his age was the but-for cause of his termination. Leiner concedes that he has no direct evidence of age discrimination, see Plaintiff's Memorandum of Law, Docket No. 40, p. 11, and in his deposition, he himself characterizes his age-related allegations as speculative.[8] When discussing the notion that "people" at Fresenius Kabi—

---

[8] Indeed, rather than age-based, Leiner testified at one point that he was terminated as a scapegoat to satisfy auditors. (Leiner Dep., pp. 157, 159.)

unidentified people—would "tiptoe around age" and communicate in code, Leiner admitted that these "people" were only speculating and that no one in management ever said anything about age or communicated in any code. (Leiner Dep., pp. 105-107.) In his testimony concerning his discussion with John Horab, Leiner repeatedly described the character of their conversation as speculative. (Id. at 110.) And when Leiner stated that Hopkins was nasty to the over-40-years-old operators, he said Hopkins was nasty to all operators across all shifts, the bulk of whom happened to be over 40. (Leiner Dep., pp. 49-50.) That is, Hopkins was nasty to all operators, some of whom happened to be over 40, but not nasty to any of them *because* they were over 40.

Leiner also fails to put forth sufficient evidence that he was treated differently than Marques Palmer and Jason Ashbery because of his age. While it is true that "more favorable treatment of employees not in the protected group" may be evidence of discrimination, Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994), that is only the case if those employees are "similarly situated in all material respects," Hogan v. State of Conn. Judicial Branch, 220 F. Supp. 2d 111, 119 (D. Conn. 2002).

Here, viewing the evidence in Leiner's favor, Palmer backdated an audit form, and Ashbery signed off on an incomplete batch record. But there is no evidence that either Palmer's or Ashbery's conduct directly threatened the health and safety of the general public, as Leiner's actions did when he falsely stated that the loading of injectable pharmaceuticals was done in an aseptic manner. Nothing in the record suggests that Palmer's or Ashbery's conduct put the public's health directly at risk, as Leiner's did. Because there is insufficient evidence that Palmer and Ashbery were similarly situated,

Fresenius Kabi's alleged differential treatment of them is not evidence of age discrimination.[9]

And to the extent Leiner argues that Fresenius Kabi could or should have imposed a sanction short of termination for his falsification of documents, that is a business judgment not subject to judicial second-guessing. See Yu v. N.Y.C. Hous. Dev. Corp., 494 Fed.Appx. 122, 125 (2d Cir. 2012) ("[The Court's] role is . . . not to act as a super personnel department that second guesses employers' business judgments."); Scaria v. Rubin, 117 F.3d 652, 655 (2d Cir. 1997) ("[The court does] not sit as a super-personnel department that reexamines an entity's business decisions."); Thornley v. Penton Publ'g, 104 F.3d 26, 29 (2d Cir. 1997) ("employee[s] may be discharged on the basis of subjective business judgments, for any reason that is not discriminatory"). It was also a business judgment made by individuals who were either the same age or older than Leiner— Huffman, Hopkins, Martinez, Nowicki, and Callanan. (Martinez Aff., ¶ 51.)

Thus, even viewing the evidence and drawing all inferences in Leiner's favor, this Court finds insufficient evidence from which a trier of fact could reasonably conclude that but for his age, Fresenius Kabi would not have terminated Leiner's employment. Fresenius Kabi is therefore entitled to summary judgment on these claims.

---

[9] As it further relates to the treatment of other employees, it should be noted that between 2012 and 2014, Fresenius Kabi terminated eight employees for falsification of documents, two of whom were under 40, which significantly undermines Leiner's claims that Fresenius Kabi treats younger workers more favorably. See Cai, 2012 WL 933668, at *8 ("Because employees outside the protected class were subject to the same treatment as those in the protected class, there is no indication that [the defendant] treated younger employees more favorably.").

### C. Leiner's ADEA Retaliation Claims[10]

The ADEA makes it unlawful for an employer to discriminate or retaliate against an individual on the basis that such individual opposed any practice made unlawful by the ADEA or filed a charge, testified, assisted, or participated in the investigation of discriminatory practices. See 29 U.S.C. § 623 (d); see also Preuss v. Kolmar Labs., Inc., 970 F. Supp. 2d 171, 195-96 (S.D.N.Y. 2013) ("The ADEA prohibits discrimination in retaliation for an employee's opposition to discriminatory practices.").

As with the discrimination claims above, Leiner's retaliation claims are analyzed using the McDonnell Douglas framework. See Terry v. Ashcroft, 336 F.3d 128, 141 (2d Cir. 2003). First, Leiner must establish a prima facie case of retaliation by showing (1) participation in a protected activity under the ADEA; (2) that Fresenius Kabi knew of his protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action. See Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005) (citations omitted); Kessler v. Westchester Cty. Dep't of Soc. Servs., 461 F.3d 199, 205-06 (2d Cir. 2006).

If Leiner meets this burden, "a presumption of retaliation arises" and Fresenius Kabi must then "articulate a legitimate, non-retaliatory reason for the adverse employment action." Jute, 420 F.3d at 173.

The burden then shifts back to Leiner to show that Fresenius Kabi's proffered reason is pretext for retaliation. See Wu v. Metro-North Commuter R.R. Co., No. 14-CV-

---

[10] As noted at footnote 7, *supra*, age discrimination claims under the ADEA and NY HRL § 296 are subject to the same analysis. See, e.g. Colandrea v. Hunter-Tannersville Cent. Sch. Dist., 15-CV-456 (LEK/ATB), 2017 WL 1082439, at *4 (N.D.N.Y. Mar. 22, 2017).

7015-LTS-FM, 2016 WL 5793971, at *12 (S.D.N.,Y. Aug. 4, 2016) (citations omitted). Pretext may be shown "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." Id. (citations omitted).

Here, Leiner cannot make out a prima facie case of retaliation.

First, there is insufficient evidence from which a factfinder could conclude that Leiner participated in protected activity. Protected activity is "action taken to protest or oppose statutorily prohibited discrimination." Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2d Cir. 2000). The only protected activity that Leiner claims to have engage in is his conversation with Horab concerning Fresenius Kabi's reorganization. Leiner himself, however, repeatedly characterized this conversation as shared speculation concerning why Fresenius Kabi was terminating experienced employees. (Leiner Dep., pp. 109-111.) No reasonable factfinder could conclude that this conversation, even assuming that it occurred, constituted opposition to prohibited employment practices nor is there any evidence in the record that Leiner ever lodged an age-related complaint—formal or informal— with Fresenius Kabi. (Huffman Aff., ¶ 19; Hopkins Aff., ¶ 33; Martinez Aff., ¶ 59.) As a result, there is no evidence that Fresenius Kabi was ever put on notice that Leiner was opposing prohibited employment practices. See Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 292 (2d Cir. 1998).

Second, Leiner has not presented any evidence that the individuals involved in his termination were aware of his earlier conversation with Horab, even if this conversation

could be considered voiced opposition to age-based discrimination practices. <u>See</u> <u>Sundaram v. Brookhaven Nat'l Labs.</u>, 424 F. Supp. 2d 545, 584 (E.D.N.Y. 2006) (finding no prima facie showing where there was no evidence that decisionmakers were aware of the plaintiff's protected activity).

And finally, Leiner presents no evidence of a causal connection between this conversation and his termination. Importantly, Leiner's conversation with Horab occurred in or about September 2012. (Leiner Dep., p. 111.) This is well before the significant intervening events that defeat a causal connection, including Leiner's promotion offer in March 2013, his appointment to the Leadership Team in April 2013, and his falsification of documents in August 2013. It is also more than a full year before Leiner's termination in October 2013.

In any event, even assuming that Leiner could make out a prima facie case of retaliation, he has failed to come forth with sufficient evidence from which a reasonable trier of fact could conclude that Fresenius Kabi's legitimate, non-discriminatory reason for terminating his employment was false, as explained above. And he has presented no evidence whatsoever that but-for unlawful retaliation, Fresenius Kabi would not have terminated his employment. <u>See</u> <u>Ehrbar v. Forest Hills Hosp.</u>, 131 F. Supp. 3d 5, 36 (E.D.N.Y. 2015) ("To survive summary judgment on a claim of retaliation, a plaintiff must show that retaliatory intent was the "but-for" cause of any wrongful actions—that is, 'the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.'") (quoting <u>Univ. of Tex. S.W. Med. Ctr. v. Nassar</u>, 570 U.S.

338, 360, 133 S. Ct. 2517, 186 L. Ed. 2d 503 (2013)).  Fresenius Kabi is therefore entitled to summary judgment on Leiner's retaliation claims.[11]

## IV.  CONCLUSION

Viewing all evidence and drawing all inferences in Leiner's favor, this Court finds that Fresenius Kabi is entitled to summary judgment on Leiner's federal and state age discrimination and retaliation claims.  Fresenius Kabi's motion for summary judgment will therefore be granted in its entirety.

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendant's Motion for Summary Judgment (Docket No. 28) is GRANTED in its entirety.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:  November 1, 2019
          Buffalo, New York

                                                            s/William M. Skretny
                                                            WILLIAM M. SKRETNY
                                                            United States District Judge

---

[11] Fresenius Kabi also argues that it is entitled to summary judgment on Leiner's ADEA claim because he failed to exhaust his administrative remedies.  This Court need not reach this argument in light of its finding that Fresenius Kabi is entitled to summary judgment on the merits.